**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **D.G.S., a minor, by and through his parents and natural guardians, DAVID O. SMITH and GALEN SMITH, and DAVID O. SMITH and GALEN SMITH, Individually**, <br><br> Plaintiffs, <br> v. <br><br> **BERKELEY COUNTY SCHOOL DISTRICT, TOWN OF MONCKS CORNER, d/b/a MONCKS CORNER POLICE DEPARTMENT, and TREVAR HEMPHILL, in his Individual Capacity**, <br><br> Defendants. | Civil Action No.: 2:26-cv-4162-RMG <br><br> **COMPLAINT** <br> ***(Jury Trial Demanded)*** |

Plaintiffs D.G.S., by and through his parents and natural guardians, David O. Smith and Galen Smith, and David O. Smith and Galen Smith, Individually (collectively, "Plaintiffs"), by and through undersigned counsel, allege as follows against Defendants Berkeley County School District, Town of Moncks Corner, d/b/a Moncks Corner Police Department, and Trevar Hemphill (collectively, "Defendants"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff D.G.S. ("Student") is a twelve-year-old minor who resides with his parents in Berkeley County, South Carolina. At all times relevant to this action, Student was enrolled as a student at Berkeley County Middle School, within Defendant Berkeley County School District. Student is diagnosed with autism spectrum disorder ("ASD") and receives special education and related services pursuant to an Individualized Education Program ("IEP") and Behavior Intervention Plan ("BIP").

2. Plaintiffs David O. Smith and Galen Smith are Student's parents and natural guardians and are citizens and residents of Berkeley County, South Carolina. They bring this action on Student's behalf, as his parents and natural guardians, and individually in their own right for the harm they have suffered as a direct and proximate result of Defendants' conduct described herein.

3. Defendant Berkeley County School District (the "District") is a public school district organized and existing under the laws of the State of South Carolina. The District is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and a "governmental entity" and "political subdivision" as those terms are defined in the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-30. The District operates the public schools serving Berkeley County, South Carolina, including Berkeley County Middle School.

4. The District may be served pursuant to Fed. R. Civ. P. 4(j)(2) and S.C.R. Civ. P. 4(d)(8) by delivering a copy of the Summons and Complaint to its chief executive officer, Superintendent Dr. Anthony Dixon, at the District's administrative offices located at 107 East Main Street, Moncks Corner, South Carolina 29461.

5. Defendant Town of Moncks Corner (the "Town") is a municipal corporation organized and existing under the laws of the State of South Carolina, and is a "governmental entity" and "political subdivision" as those terms are defined in S.C. Code Ann. § 15-78-30. The Town owns, operates, and directs the Moncks Corner Police Department (the "Department"), including the School Resource Officer ("SRO") program at issue in this action.

6. Defendant Trevar Hemphill ("Defendant Hemphill") is, and at all times relevant to this action was, a law enforcement officer employed by the Department, holding the rank of Corporal, and assigned as the SRO at Berkeley County Middle School. Defendant Hemphill is sued in his individual capacity for the conduct described herein, which was undertaken under color of state law within the course and scope of his employment with the Town. The incident report and case documentation maintained by the Department under Case No. 26-0387 pertain to the February 17, 2026 incident described below.

7. This Court has federal question jurisdiction over Plaintiffs' claims arising under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; and 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331 and 1343.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

9. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in Berkeley County, South Carolina, which lies within the Charleston Division of this District. 28 U.S.C. § 121(a).

## FACTUAL BACKGROUND

### Student's Disability, Educational Program, and Support Team

10. Student is a twelve-year-old student with ASD enrolled in the District's schools. Student has an active IEP and BIP, most recently revised on January 23, 2026.

11. Student's BIP establishes a graduated crisis-response protocol requiring, in order: (a) de-escalation; (b) Crisis Prevention Institute ("CPI") interventions; and (c) physical restraint only "as a very last resort."

12. Student attends school on a partial-day schedule, from approximately 8:00 a.m. to 12:30 p.m., with a 1:1 trained paraprofessional and a private Applied Behavior Analysis ("ABA") therapist present throughout his school day.

13. Defendant Hemphill, employed by the Department and assigned to the school by the Town, was routinely stationed at Berkeley County Middle School.

14. Defendant Hemphill was not new to this assignment. As of July 2025, he had served in law enforcement for fifteen years and was entering his fourth year as the SRO at Berkeley Middle. The District publicly celebrated him as its 2024–2025 School Resource Officer of the Year, describing him as a dependable, integrated member of the school community.

Defendant Hemphill's long tenure at this specific school defeats any suggestion that the District and the Town lacked a meaningful opportunity to coordinate with him regarding Student's BIP and disability-related needs, and undermines the District's position, described below, that he was some unfamiliar outside actor beyond the District's practical reach.

15. Despite Defendant Hemphill's regular presence at the school, and despite the District's and the Town's knowledge of Student's disability and documented behavioral profile, Defendant Hemphill received no training on Student's BIP, no briefing on de-escalation techniques appropriate for students with ASD, and no communication from the District regarding how to interact with Student safely and lawfully.

**The February 17, 2026 Incident**

16. On February 17, 2026, Student was removed from a Unified Physical Education class following escalating behavior.

17. While Student was being walked to the office, Defendant Hemphill intervened and took Student's water bottle — an action not sanctioned by Student's BIP and one predictably likely to further escalate a student in crisis.

18. The school's trained CPI team was called, but there is no evidence it was deployed or utilized before Defendant Hemphill handcuffed Student.

19. The graduated response protocol required by Student's BIP — de-escalation first, CPI interventions second, and physical restraint only as a last resort — was not followed.

20. Student sustained visible bruising and wrist marks and exhibited physical pain and emotional distress for days following the incident.

**The District's Response to the February Incident and Failure to Produce Records**

21. On the same day, Student's father, David O. Smith, emailed the school principal requesting incident documentation, restraint reports, surveillance footage, and an emergency IEP meeting.

22. Despite repeated follow-up requests on March 9 and March 17, 2026, the District failed to provide the requested video footage within the 45-day window mandated by the IDEA. See 34 C.F.R. § 300.613. The District subsequently revealed that footage of the incident existed but refused to release it, citing the presence of other students in the recording.

23. An IEP meeting was held on February 23, 2026, without a proper Notice of Meeting having been issued to Student's parents beforehand, and without a Prior Written Notice issued afterward, in violation of 34 C.F.R. §§ 300.322 and 300.503.

24. No changes were made to Student's IEP or BIP as a result of this meeting. Critically, Defendant Hemphill was never informed of Student's BIP following this incident, leaving him without any guidance regarding how to safely interact with Student going forward.

**The March 27, 2026 Incident**

25. On March 27, 2026, during talent show practice, Student became dysregulated and was moved to a breezeway.

26. Trained school staff, Student's 1:1 paraprofessional, and his private ABA therapist were present and attempting to de-escalate the situation.

27. Defendant Hemphill again intervened, handcuffed Student, and moved him out of the range of the school's CCTV cameras.

28. The seclusion/restraint report later issued regarding this incident does not explain how or why Defendant Hemphill became involved, or why a "child control hold" could not be safely executed by the trained staff already present and attempting de-escalation.

29. Neither the February nor the March incident was documented in the District's PowerSchool student information system, because the restraints were applied by Defendant Hemphill rather than by a District employee — a records gap that is itself evidence of deficient policy and coordination between the District and the Town regarding the SRO's role in responding to disabled students in crisis.

30. The seclusion/restraint report for the March incident appears to have been backdated to March 31, 2026, referencing a meeting held that same day.

**The District's Continued Failure to Protect Student**

31. Following the March incident, Student's father submitted a written statement revoking consent for the use of mechanical restraints on Student and demanding that mechanical restraint not be used as a response to Student's behavior going forward.

32. The District represented that this revocation would be included in Student's file, IEP, and BIP.

33. Despite this revocation, and despite two documented handcuffing incidents involving the same student and the same officer within a five-week span, there is no evidence that Student's IEP or BIP was amended following either incident to include specific de-escalation strategies or otherwise address the risk of a third such incident.

34. In its April 23, 2026 written response to the South Carolina Department of Education ("SCDOE") complaint described below, the District took the position that Defendant Hemphill — despite being routinely stationed at the school, given unsupervised access to Student during a behavioral crisis, and known to have restrained Student once already — is "not employed or directed by school staff," does not enforce school-based expectations, and is present at the school only to "enforce criminal laws and regulations and engage in community-based law enforcement activities."

35. Neither incident giving rise to this action involved any alleged crime, charge, or arrest. Both incidents arose from a twelve-year-old disabled student's behavioral crisis during the school day.

**The SCDOE Complaint and Letter of Resolution**

36. On April 1, 2026, Student's father filed a state complaint with the SCDOE, Office of Special Education Services, against the District.

37. On April 2, 2026, the District provided Student's father with a copy of the procedural safeguards required under 34 C.F.R. § 300.504.

38. On April 3, 2026, the SCDOE requested a written response from the District's Director of Special Services no later than April 21, 2026.

39. The District submitted its written response to the SCDOE on April 23, 2026, and a copy was provided to Student's father on April 24, 2026.

40. On May 29, 2026, the SCDOE issued a Letter of Resolution finding the District out of compliance with six separate requirements of the IDEA and its implementing regulations, including: (a) failure to develop an IEP and BIP adequate to provide a free appropriate public education ("FAPE"), 34 C.F.R. §§ 300.320, 300.101; (b) failure to implement Student's IEP and BIP between February 17 and March 27, 2026, 34 C.F.R. §§ 300.320, 300.323; (c) failure to provide proper meeting notices, 34 C.F.R. § 300.322; (d) failure to provide Prior Written Notice, 34 C.F.R. § 300.503; (e) failure to provide timely access to video records of both incidents, 34 C.F.R. § 300.613; and (f) denial of FAPE, 34 C.F.R. §§ 300.17, 300.101.

41. Among its findings, the SCDOE concluded that Student's IEP and BIP "do not contain sufficient information to know what to do when [Student] is in crisis mode," that the IEP documented more service hours than Student's actual instructional day could accommodate, and that there was no evidence District staff utilized any specific de-escalation strategy during either the February or the March incident.

42. The SCDOE ordered the District to gather additional data regarding Student's present levels of performance, reconvene his IEP team, and revise his IEP and BIP accordingly, among other corrective actions. The SCDOE's findings are alleged herein as evidence of Defendants' notice, policy, and practice; Plaintiffs do not bring a separate cause of action under the IDEA in this Complaint.

## <u>Student's Injuries and Damages</u>

43. As a direct and proximate result of the acts and omissions of Defendants described herein, Student has suffered and continues to suffer physical injury, including bruising and wrist injuries from both handcuffing incidents, and severe emotional and psychological harm, including anxiety, fear of law enforcement, school avoidance, humiliation, and emotional distress.

44. Student has required and obtained, and will in the future require, mental health treatment, additional ABA therapy, behavioral services, and tutoring to remediate the harm caused by Defendants' conduct, and has incurred and may in the future incur expenses for such treatment and services.

45. Plaintiffs David O. Smith and Galen Smith have suffered emotional distress and have incurred expenses as a direct and proximate result of Defendants' conduct toward their son.

## FIRST CAUSE OF ACTION: VIOLATION OF SECTION 504 OF THE REHABILITATION ACT AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT (Against Defendant Berkeley County School District)

46. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

47. Section 504 and Title II of the ADA prohibit a recipient of federal funds and a public entity, respectively, from discriminating against a qualified individual on the basis of disability, and require reasonable accommodation of known disabilities. 29 U.S.C. § 794; 42 U.S.C. § 12132.

48. To recover compensatory damages under Section 504 and Title II, a plaintiff must show that the defendant acted with deliberate indifference to the plaintiff's federally protected rights.

49. The District's conduct meets that standard. After the first handcuffing incident, the District convened a meeting, made cosmetic adjustments to Student's records, and failed to take the single most critical corrective action reasonably available to it: informing Defendant Hemphill of Student's BIP and disability-related needs.

50. The identical outcome recurred in March 2026 — the same student, the same officer, the same method of restraint — as the direct and foreseeable result of the District's indifference to Student's known disability-related needs.

51. The District's written response to the SCDOE complaint, disclaiming responsibility for Defendant Hemphill's conduct by characterizing him as entirely outside the District's control notwithstanding his routine, unsupervised presence among the District's disabled

students, reflects an affirmative policy of indifference to the District's non-delegable duty to provide Student an education free from discrimination on the basis of his disability.

52. As a direct and proximate result of the District's deliberate indifference, Student suffered the injuries and damages described herein, entitling Plaintiffs to compensatory damages, declaratory and injunctive relief, and attorneys' fees under 29 U.S.C. § 794a and 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION: 42 U.S.C. § 1983 — FOURTH AMENDMENT / MONELL MUNICIPAL LIABILITY (Against Defendant Berkeley County School District)**

53. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

54. The District, acting under color of state law, caused Student to be subjected to an objectively unreasonable seizure and use of physical force in violation of his rights under the Fourth Amendment to the United States Constitution. Because Student's claim arises from the use of force in the course of a seizure, it is analyzed under the Fourth Amendment rather than as a substantive due process claim. Graham v. Connor, 490 U.S. 386, 395 (1989).

55. The District maintained a policy, custom, or practice that was the moving force behind the violation of Student's Fourth Amendment rights, and that subjects the District to liability for that violation, in at least the following respects:

a. Permitting and acquiescing in a practice of handcuffing disabled students during non-criminal behavioral crises, in the absence of any alleged crime, charge, or arrest;

b. Failing to provide Defendant Hemphill, or any School Resource Officer assigned to its schools, with access to the Behavior Intervention Plans of the disabled students with whom he would foreseeably interact, or with any training in disability-aware de-escalation;

c. Failing to adopt, publish, or enforce any policy defining the circumstances under which a School Resource Officer may deploy physical force or mechanical restraint against a student receiving special education services, or the limits upon that authority;

d. Issuing Individualized Education Programs and Behavior Intervention Plans that were facially unimplementable, as the SCDOE itself found; and

e. Permitting the same harmful outcome to recur five weeks later, involving the same student and the same officer, without intervention, retraining, or correction.

56. The District's written response to the SCDOE complaint — affirmatively disclaiming any responsibility for or control over Defendant Hemphill's conduct toward its own disabled students — evidences deliberate indifference of the District's final policymakers to the known and obvious risk of harm to Student.

57. As a direct and proximate result of the District's policies, customs, and practices, Student suffered the injuries and damages described herein.

**THIRD CAUSE OF ACTION: SOUTH CAROLINA TORT CLAIMS ACT — NEGLIGENT SUPERVISION AND NEGLIGENT IMPLEMENTATION (Against Defendant Berkeley County School District)**

58. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

59. The District owed Student a duty to supervise its employees and agents, and to implement Student's IEP and BIP as written, so as to prevent the physical and emotional harm described herein. Immunity is not available to the District for the grossly negligent exercise of its responsibility for or control over students in its care. S.C. Code Ann. § 15-78-60(25).

60. The District breached that duty and was negligent, grossly negligent, reckless, and/or willful and wanton in at least the following particulars:

a. Failing to inform Defendant Hemphill of Student's IEP and BIP, or to train him regarding Student's disability-related needs, after the District knew or should have known Defendant Hemphill had physically restrained Student once already;

b. Failing to implement the graduated, de-escalation-first crisis response required by Student's BIP during either the February 17 or March 27, 2026 incidents;

c. Failing to adopt and follow adequate policies coordinating with the Town and the Department regarding Defendant Hemphill's role in responding to the behavioral crises of disabled students;

d. Failing to timely provide Student's parents with required meeting notices, Prior Written Notice, and access to video records of both incidents;

e. Failing to revise Student's IEP or BIP after either incident to prevent a recurrence; and

f. In such other particulars as will be shown in discovery and at trial.

61. The District's acts and omissions constituted the failure to exercise even slight care and amounted to gross negligence. Because the District exercised its responsibility for the supervision and control of Student in a grossly negligent manner, the exception to the waiver of immunity set forth in S.C. Code Ann. § 15-78-60(25) does not shield the District from liability.

62. As a direct and proximate result of the District's negligence, gross negligence, and recklessness, Student suffered the injuries and damages described herein, for which Plaintiffs are entitled to recover actual damages in an amount to be determined by a jury, subject to the limitations of S.C. Code Ann. § 15-78-120.

**FOURTH CAUSE OF ACTION: 42 U.S.C. § 1983 — FOURTH AMENDMENT EXCESSIVE FORCE (Against Defendant Trevar Hemphill, Individually)**

63. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

64. At all times relevant to this action, Defendant Hemphill acted under color of state law in his capacity as the SRO assigned to Student's school.

65. Handcuffing a twelve-year-old child with autism during a non-criminal behavioral episode — with no crime alleged, no charge filed, and no danger presented that could not be addressed through the graduated, BIP-mandated de-escalation protocol already staffed and

in place — constitutes an objectively unreasonable seizure and use of force in violation of the Fourth Amendment.

66. The March 27, 2026 incident is particularly indefensible: by that date, Defendant Hemphill had already handcuffed this known disabled student once, on February 17, 2026, and had received no disability training or BIP briefing in the intervening weeks. Defendant Hemphill's decision to again resort to mechanical restraint, notwithstanding the trained staff, 1:1 paraprofessional, and private ABA therapist already present and attempting de-escalation, was objectively unreasonable.

67. Defendant Hemphill is not entitled to qualified immunity because, at all relevant times, it was clearly established that the use of mechanical restraint against a non-dangerous individual — let alone a twelve-year-old child in a documented behavioral crisis, with no crime alleged — violates the Fourth Amendment.

68. As a direct and proximate result of Defendant Hemphill's unreasonable and excessive use of force, Student suffered the injuries and damages described herein. Defendant Hemphill's conduct was undertaken with reckless or callous indifference to Student's federally protected rights, entitling Plaintiffs to punitive damages under 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION: 42 U.S.C. § 1983 — MONELL MUNICIPAL LIABILITY
## (Against Defendant Town of Moncks Corner)

69. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

70. The Town's and the Department's practice of stationing Defendant Hemphill at the school with unsupervised access to disabled students in crisis, without training regarding disability-aware de-escalation techniques, and its failure to adopt any protocol governing SRO interactions with such students, constitute a policy, custom, or practice of deliberate indifference to the constitutional rights of students such as Student, and subject the Town to municipal liability for that constitutional violation.

71. Two handcuffing incidents involving the same student and the same officer, without any intervening training or policy correction, is itself sufficient to establish the Town's de facto policy or custom of deliberate indifference.

72. As a direct and proximate result of the Town's policies, customs, and practices, Student suffered the injuries and damages described herein.

**SIXTH CAUSE OF ACTION: TITLE II OF THE AMERICANS WITH DISABILITIES ACT — FAILURE TO ACCOMMODATE DISABILITY IN LAW ENFORCEMENT INTERACTIONS (Against Defendant Town of Moncks Corner)**

73. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

74. Title II of the ADA prohibits a public entity from denying a qualified individual with a disability the benefits of its services, programs, or activities, or subjecting him to discrimination, by reason of his disability. 42 U.S.C. § 12132. The Town's provision of police services, including its School Resource Officer program, is a service, program, or activity of a public entity within the meaning of Title II. Title II's implementing regulations require a public entity to make reasonable modifications to its policies, practices, and procedures where necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)(i). Title II is privately enforceable through the remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act, 42 U.S.C. § 12133, and Plaintiffs accordingly bring this Cause of Action directly under Title II.

75. Defendant Hemphill was a regular presence at Student's school and knew, or should have known — particularly after the February incident — that Student had ASD, yet made no accommodation whatsoever for that known disability, instead using immediate physical restraint rather than any disability-aware de-escalation approach on both occasions.

76. The Town's and the Department's complete absence of any policy or training protocol governing SRO interactions with students with disabilities in crisis, and their failure to modify any practice after the February 17, 2026 incident placed them on notice of the risk to Student, constitute a failure to make reasonable modifications and a denial to Student of the benefits of the Town's services by reason of his disability.

77. The Town acted with deliberate indifference to Student's federally protected rights. As a direct and proximate result of the Town's failure to accommodate Student's known disability, Student suffered the injuries and damages described herein, entitling Plaintiffs to compensatory damages, declaratory and injunctive relief, and attorneys' fees pursuant to 42 U.S.C. §§ 12133 and 12205.

**SEVENTH CAUSE OF ACTION: STATE LAW — ASSAULT, BATTERY, AND FALSE IMPRISONMENT (Against Defendant Town of Moncks Corner and Trevar Hemphill)**

78. Plaintiffs incorporate by reference the allegations set forth above as if fully restated herein.

79. Defendant Hemphill's physical restraint of Student on both February 17, 2026 and March 27, 2026, without lawful justification, in the absence of any crime, exigent circumstance, or reasonable basis to believe the graduated de-escalation protocol already staffed and in place could not succeed, constitutes assault, battery, and false imprisonment under South Carolina law.

80. Plaintiffs plead this Cause of Action in the alternative. To the extent Defendant Hemphill's conduct is found to have occurred within the course and scope of his official duties and without actual fraud, actual malice, intent to harm, or the commission of a crime involving moral turpitude, the Town is liable for that conduct under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 et seq., and Defendant Hemphill is not personally liable for it. S.C. Code Ann. § 15-78-70(a). To the extent Defendant Hemphill's conduct is instead found to have constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude, Defendant Hemphill is personally liable for it in his individual capacity, S.C. Code Ann. § 15-78-70(b). Plaintiffs are not required to elect between these theories at the pleading stage.

81. As a direct and proximate result of Defendant Hemphill's conduct, Student suffered the injuries and damages described herein, for which Plaintiffs are entitled to recover actual damages in an amount to be determined by a jury. Any recovery against the Town is subject to the limitations of S.C. Code Ann. § 15-78-120; those limitations do not apply to any recovery against Defendant Hemphill in his individual capacity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

a. Actual and compensatory damages in an amount to be determined by a jury, including damages for Student's physical injuries, pain and suffering, and emotional distress, and for Plaintiffs David O. Smith's and Galen Smith's own emotional distress and expenses;

b. Compensatory education services, including additional ABA therapy, behavioral services, and tutoring, and an Independent Educational Evaluation at the District's expense;

c. Declaratory and injunctive relief, including revision of Student's IEP and BIP, disability-awareness and de-escalation training for SROs and other law enforcement personnel assigned to District schools, and adoption of a protocol governing SRO interactions with students with disabilities in crisis;

d. Punitive damages against Defendant Trevar Hemphill in an amount to be determined by a jury;

e. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 29 U.S.C. § 794a, and 42 U.S.C. § 12205;

f. Pre-judgment and post-judgment interest as allowed by law;

g. The costs of this action; and

h. Such other and further relief as this Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

*[Signature Block on Following Page]*

**The Law Offices of Joshua E. Slavin, LLC**
/s/ Joshua Slavin
Joshua E. Slavin
SC Bar ID: 102912
PO Box 762, Mount Pleasant, SC 29465
Phone: 843-619-7338 Fax: 888-246-8914
Email: josh@attorneycarolina.com
ATTORNEY FOR PLAINTIFFS

September 21, 2026
Mount Pleasant, South Carolina